U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED
2013 SEP 19 P 4:14
JON A. SANFILIPPO
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER GOODVINE,
PLAINTIFF,

v.

CASE NO. 13-C-1057

DR. GEORGE MONESE,
DR. GANNON, BYRON BARTOW,
DR. NICHOLAS BUHR, and CAPTAIN
TIMOTHY CASIANA,
DEFENDANTS.

## CIVIL RIGHT COMPLAINT UNDER 42 USC § 1983

THE PLAINTIFF CHRISTOPHER GOODVINE, PRO SE, COMPLAINS AGAINST THE ABOVE-NAMED DEFENDANTS AS FOLLOWS:

### PRELIMINARY STATEMENT

1. THIS IS A CIVIL RIGHTS COMPLAINT BROUGHT PURSUANT TO 42 U.S.C. § 1983, SEEKING REDRESS AND DAMAGES FOR PLAINTIFF CHRISTOPHER GOODVINE. THIS ACTION ALLEGES THAT AFTER ARRIVING AT THE WISCONSIN RESOURCE CENTER ("WRC"), HE DECOMPENSATED, STOPPED EATING AND DRINKING, ATTEMPTED SUICIDE AND WAS HURRIEDLY TRANSFERRED WHEREUPON HE ATTEMPTED SUICIDE AGAIN. IN BOTH CASES DEFENDANTS AT ALL TIMES ACTED WITH DELIBERATE INDIFFERENCE, IN VIOLATION OF HIS RIGHTS UNDER THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION.

## JURISDICTION/VENUE

2. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the Constitution, and pursuant to 28 U.S.C. § 1343(a)(3), because this action seeks to redress the deprivation, under color of state law, of Plaintiff's rights.

3. Venue in this judicial district is proper under 28 U.S.C. § 1391(b), because the events animating this action began in Winnebago, WI, which is located in the Eastern District of Wisconsin and because most of the defendants reside in this district.

## PARTIES

4. Christopher Goodvine, at all times relevant to this action, was a U.S. citizen and was confined at WRC and Columbia Correctional Institution ("CCI").

5. Defendant George Monese is a psychiatrist at WRC.

6. Defendant Dr. Gannon is a physician at WRC.

7. Defendant Byron Bartow is the superintendent of WRC, and Mark Schmidt is the security chief.

8. Defendant

9. DEFENDANT CASIANA IS A SECURITY SUPERVISOR AT CCI.

## ALLEGATIONS OF FACT
## BACKGROUND

10. PLAINTIF HAS A LONG HISTORY OF SUICIDE AND SELF-HARM ATTEMPTS DATING BACK TO CHILDHOOD.

11. MORE RECENTLY HE HAS BEEN RUSHED TO LOCAL E.R.S MORE THAN 20 TIMES DURING THE PAST FIVE YEARS FOR SUICIDE ATTEMPTS AND SERIOUS EPISODES OF "CUTTING."

12. IN SEPTEMBER OF 2010, DR. MONESE DIAGNOSED PLAINTIF AS SUFFERING FROM BODERLINE PERSONALITY DISORDER PUNCTUATED WITH CIRCUMSCRIBED PSYCHOTIC EPISODES DURING HIS CUTTING EPISODES. SEE EXHIBIT A, A TRUE AND CORRECT COPY OF PLAINTIF'S MENTAL HEALTH RECORD AUTHORED BY DR. MONESE IN 2010.

13. HE HAS BEEN DIAGNOSED WITH VARIOUS PSYCHIATRIC CONDITIONS, INCLUDING: BORDERLINE PERSONALITY DISORDER WITH CIRCUMSCRIBED PSYCHOTIC EPISODES; ADJUSTMENT DISORDER; MOOD DISORDER; DEPRESSIVE DISORDER; BIPOLAR DISORDER; BIPOLAR II DISORDER; ANXIETY DISORDER; AND INTERMITTENT EXPLOSIVE DISORDER.

14. WHEN PLAINTIF ARRIVED AT WRC IN LATE AUGUST 2012,

INTAKE STAFF NOTED THAT HE PRESENTED A MODERATE TO HIGH SUICIDE RISK.

15. DEFENDANT DR. MONESE MET WITH PLAINTIFF IN LATE AUGUST. HE PRESCRIBED PLAINTIFF WELLBUTRIN FOR DEPRESSION/MOOD STABILIZER AND CONTINUED THE SEROQUEL HE HAD PRESCRIBED PLAINTIFF IN 2010.

16. SOMETIME IN EARLY SEPTEMBER 2012 PLAINTIFF BEGAN EXPERIENCING STRONG SUICIDAL IDEATION, HE WROTE TO DR. MONESE EXPLAINING THIS BUT RATHER THAN SEE HIM, DR. MONESE INCREASED PLAINTIFF'S SEROQUEL.

17. WELLBUTRIN IS CONTRAINDICATED FOR INDIVIDUALS WITH EATING DISORDERS AND CAN LEAD TO APPETITE LOSS.

18. DR. MONESE WAS AWARE OF PLAINTIFF'S HISTORY OF LOSS OF APPETITE.

19. BY SEPTEMBER 25, 2012, PLAINTIFF BEGAN REFUSING ALL MEAL TRAYS AND AND WOULD GO DAYS WITHOUT DRINKING.

20. DR. MONESE AND DR. GANNON WERE AWARE OF THIS, BUT NEITHER DID ANYTHING.

21. IN FACT, FROM 9-25-12 TO 10-15-12 PLAINTIFF LOST MORE THAN 15% OF HIS BODY WEIGHT, BECAME DANGEROUSLY DEHYDRATED AND MALNOURISHED, AND HIS POTASSIUM AND
1. AUGUST OF 2012.

FOOTNOTE
2. DR. MONESE COULD HAVE ORDERED PLAINTIF'S MEDICATIONS CRUSHED OR LIQUIFIED, THUS MAKING IT IMPOSSIBLE TO STOCKPILE.

---

CALCIUM LEVELS PLUNGED.

22. WHEN DR. MONESE STOPPED BY PLAINTIF'S CELL ON OCTOBER 01, 2012, PLAINTIF EXPLAINED HE WAS VERY SUICIDAL, WOULD INDEED KILL HIMSELF, AND HAD NO THIRST OR APPETITE.

23. DR. MONESE ASKED PLAINTIF IF HE HAD SOMETHING TO HURT OR KILL HIMSELF WITH AND PLAINTIF STATED: "I KEEP SOMETHING."

24. DR. MONESE ONLY SPOKE WITH PLAINTIF FOR A FEW MOMENTS. HE PRESCRIBED CYPROHETADINE FOR PLAINTIF'S LOSS OF APPETITE. HOWEVER, HE CONTINUED THE WELLBUTRIN.

25. SOMETIME IN EARLY OCTEBER, APPROXIMATELY THE 10TH, PLAINTIF WAS FOUND TO HAVE BEEN STOCKPILING MEDICATIONS IN PREPARATION FOR A SUICIDE ATTEMPT.

26. DR. MONESE DISCONTINUED PLAINTIF'S MEDICATIONS, EVEN HIS ANTIPSYCHOTIC SEROQUEL, WHICH CONTROLLED HIS URGES TO HURT HIMSELF AND WHICH DR. MONESE HAD PRESCRIBED IN 2010,[2] BECAUSE PLAINTIF WAS PRONE TO "PSYCHOTIC" EPISODES.

27. THEN, ON OR ABOUT OCTOBER 12 OR 13, 2012, PLAINTIFF EXECUTED TWO HALOGRAPHIC WILLS AND SENT ONE TO DR. MONESE.

28. WHEN DR. MONESE SAW PLAINTIF ON OCTOBER 15, 2012, HE TOLD PLAINTIF THE WELLBUTRIN WAS CAUSING HIS APPETITE LOSS, SO HE DISCONTINUED IT AND THEN PRESCRIBED PROZAC

AND THE ANTIPSYCHOTIC LOXITANE.

29. PLAINTIFF CONTINUED TO AVOW HIS INTENT TO COMMIT SUICIDE AND THAT HE BELIEVED HE WOULD IMMINENTLY HARM HIMSELF.

30. DR. MONESE DID NOTHING. FROM THE ONSET OF PLAINTIFF'S SUICIDAL IDEATION IN EARLY SEPTEMBER UNTIL THE DAY OF HIS SUICIDE ATTEMPT, DR. MONESE REMAINED ALOOF.

31. AFTER THE MEETING WITH DR. MONESE ON OCTOBER 15, 2012, PLAINTIFF RETURNED TO HIS CELL AND ATTEMPTED SUICIDE. HE MADE A DEEP AND LONG INCISION INTO HIS RIGHT ANTECUBITAL REGION (INSIDE ELBOW), STRIKING A VEIN/ARTERY AND SUFFERING SIGNIFICANT BLOODLOSS.

32. EXHIBITS B ARE TRUE AND CORRECT COPIES OF INCIDENT REPORTS WRITTEN BY STAFF WHO OBSERVED THE HEAVY BLEEDING AND INJURY THAT DAY.

33. DR. MONESE ARRIVED ON THE SCENE AND OBSERVED THAT PLAINTIFF WAS "LOSING A LOT OF BLOOD." HE ALSO OBSERVED THAT PLAINTIFF WAS "FOUND IN A POOL OF BLOOD IN HIS CELL STUPOROUS…. HE WAS UNRESPONSIVE, MUMBLING, AND HE WAS SWEATING." HE FURTHER OBSERVED THAT PLAINTIFF WAS IN "HYPOVOLUMIC SHOCK [FROM]…. MASSIVE LOSS OF BLOOD." SEE EXHIBIT C, A TRUE AND CORRECT COPY OF DR. MONESE'S ASSESSMENT OF PLAINTIFF

34. PLAINTIFF WAS THEN RUSHED TO THE LOCAL E.R. WHERE THE WOUND WAS CLOSED WITH 12-13 SUTURES.

35. A FEW DAYS LATER HE WAS HURRIEDLY TRANSFERRED TO CCI.

36. THOUGH DEFENDANT BARTOW WAS AWARE OF PLAINTIFF'S RECENT SUICIDE ATTEMPT AND HIS IMPENDING TRANSFER, HE DID NOT ALERT CCI OFFICIALS OF THE SUICIDE ATTEMPT, OR OF THE FACT THAT THE ITEM PLAINTIFF HAD USED TO HURT HIMSELF WITH HAD NEVER BEEN RECOVERED.

37. OR, IN THE ALTERNATIVE, DR. BUHR HAD BEEN ALERTED BUT TOOK NO ACTION ON THIS INFORMATION.

38. WHEN HE ARRIVED AT CCI ON OCTOBER 18, 2012, HE ASKED TO SPEAK WITH DEFENDANT DR. BUHR. WHEN DR. BUHR ARRIVED PLAINTIFF INFORMED HIM THAT HE WAS AGITATED, UPSET, ESCALATING. HE ALSO BRANDISHED A SHARPENED PIECE OF METAL AND THREATENED TO USE IT. HOWEVER, DR. BUHR DID NOTHING. HE NEITHER INFORMED SECURITY STAFF OR MADE ANY OTHER EFFORT TO ASSESS PLAINTIFF'S SUICIDE RISK.

39. LATER THAT EVENING, PLAINTIFF ASKED DEFENDANT CASIANA TO PLACE HIM ON OBSERVATION STATUS. HE HAD A PIECE OF LINEN ABOUT HIS NECK. HE TOLD DEFENDANT CASIANA THAT HE DID NOT FEEL SAFE FROM HIS SELF-DESTRUCTIVE TENDENCIES.

3. AND M̲A̲R̲I̲E̲ S̲C̲H̲L̲O̲S̲S̲E̲R̲

40. DEFENDANT CASIANA REFUSED TO PLACE PLAINTIF IN OBSERVATION, STATING, OBSERVATION STATUS WAS "NOT A BARGAINING TOOL." HE THEN WALKED OFF.

41. CASIANA WAS AWARE OF HIS LONG HISTORY OF SUICIDE AND SELF-HARM ATTEMPTS.

42. PLAINTIF DEEPLY AND SERIOUSLY LACERATED HIS LEFT A/C REGION WHEREUPON HE PUNCTURED AN ARTERY AND BLOOD BEGAN SHOOTING OUT. PLAINTIF AGAIN SUFFERED MASSIVE BLOOD LOSS.

43. EXHIBIT D ARE TRUE AND CORRECT COPIES OF INCIDENT REPORTS WRITTEN BY OFFICER WHO WITNESSED THE INJURY AND BLOOD LOSS.

44. HE WAS RUSHED TO THE E.R. AT DIVINE SAVIOR HOSPITAL IN PORTAGE WI, WHERE DR. THOMAS COULD NOT STANCH THE BLEEDING SO SHE PLACED APPROXIMATELY 4-5 METAL CLAMPS ON PLAINTIF'S ARM TO STOP THE BLEEDING.

45. SHE THEN CALLED THE ON-CALL SURGEON, DR. WALTER, WHO PERFORMED SURGERY ON PLAINTIF TO CAUTERIZE THE ARTERY TO STOP THE BLEEDING. HE ALSO APPLIED A FIBERGLASS CAST TO PLAINTIF'S ARM.

46. A BLOOD TEST REVEALED THAT PLAINTIF'S BLOOD COUNT WAS EXTR[...], AND THAT HIS POTASSIUM

DID INDEED INCREASE SUICIDE AND SELF-HARM URGES, AND EVINCED DELIBERATE INDIFFERENCE IN VIOLATION OF HIS RIGHTS UNDER THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION.

51. DEFENDANT MONESE ALSO VIOLATED PLAINTIFF'S RIGHTS UNDER THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION WHEN HE PLACED PLAINTIFF ON WELLBUTRIN, KNOWING IT COULD CAUSE APPETITE LOSS, THEN WHEN HE CONTINUED PLAINTIFF ON IT KNOWING HE WAS LOSING MUCH WEIGHT, SERIOUSLY DEHYDRATING HIMSELF, AND FAILED TO MONITOR PLAINTIFF WHILE HE WAS ON IT.

52. DEFENDANT DR. GANNON, PLAINTIFF'S PHYSICIAN, AS ALLEGED ABOVE, VIOLATED PLAINTIFF'S RIGHTS UNDER THE EIGHTH TO THE U.S. CONSTITUTION WHEN HE ALLOWED PLAINTIFF'S TO GO WEEKS WITH HARDLY NO FOODS OR LIQUIDS, LOSE APPROXIMATELY 15% OF HIS BODY WEIGHT YET DID ABSOLUTELY NOTHING.

53. THE ACTIONS OF DEFENDANTS BUHR AND CASIANA, AS ALLEGED IN ¶¶ 38-47, WHERE, AS STATED ABOVE, THEY BOTH KNEW OF A RISK OF SUBSTANTIAL HARM TO PLAINTIFF AND IGNORED IT, EVINCED DELIBERATE INDIFFERENCE AND VIOLATED PLAINTIFF'S RIGHTS UNDER THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION.

54. THE ACTIONS OF DEFENDANT BARTOW, AS ALLEGED IN ¶¶ 14-36, EVINCED DELIBERATE INDIFFERENCE AND VIOLATED PLAINTIFF'S RIGHTS UNDER THE EIGHTH AMENDMENT TO THE U.S. CONSTITUT

AND CALCIUM LEVELS WERE LOW.

47. HE WAS ADMITTED TO THE ICU WHERE THE NEXT DAY HE RECEIVED A BLOOD TRANFUSION DURING WHICH HE RECEIVED AT LEAST A LITER OF blood.

## CAUSES OF ACTION

48. PLAINTIF REALLEGES AND INCORPORATES BY REFERENCE ¶¶ 1-47.

49. THE ACTIONS OF DEFENDANT MONESE AS ALLEGED IN ¶¶ 14-33, WHERE, AS STATED ABOVE, HE KNEW OF PLAINTIF'S HISTORY OF SUICIDE ATTEMPTS AND SELF-HARM, AND WAS AWARE THAT PLAINTIF WAS ACTIVELY EXPERIENCING SUICIDE IDEATION BUT TOOK NO REASONABLE STEPS TO ABATE THE SUBSTANTIAL RISK OF DANGER PLAINTIF PRESENTED, EVINCED DELIBERATE INDIFFERENCE AND SUBJECTED PLAINTIF TO A SUBSTANTIAL RISK OF HARM IN VIOLATION OF HIS RIGHTS UNDER THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION.

50. THE ACTIONS OF DEFENDANT MONESE AS ALLEGED IN ¶¶ 25-26, WHERE, AS STATED ABOVE, HE KNEW PLAINTIF HAD A SERIOUS MENTAL ILLNESS INDICATING THE NEED FOR SEROQUEL TO TREAT HIS URGES TO SELF-HARM, YET HE STOPPED THE SEROQUEL WITHOUT TAPERING IT, LIQUIFYING OR CRUSHING IT, SUBJECTED [PLAINTIF TO A RISK OF SERIOUS HARM]

## RELIEF REQUESTED

WHEREFORE, PLAINTIFF RESPECTFULLY REQUEST THE COURT GRANT THE FOLLOWING:

55. AWARD COMPENSATORY AND PUNITIVE DAMAGES IN AN AMOUNT TO BE DETERMINED AT TRIAL.

56. AWARD ALL COSTS, FEES AND INTERESTS TO THE FULLEST EXTENT OF THE LAW.

## JURY TRIAL DEMAND

57. PLAINTIFF'S RESPECTFULLY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

## VERIFICATION OF COMPLAINT

58. I HEREBY SWEAR THAT THE FOREGOING IS TRUE AND CORRECT UNDER THE PENALTY OF PERJURY AND PURSUANT TO 28 U.S.C. § 1746.

DATED THIS 8TH DAY OF SEPTEMBER, 2013.

*[signature]*

CHRISTOPHER A. GOODVINE #104528
COLUMBIA CORR. INST.
P.O. BOX 900
PORTAGE, WI 53901-0900